UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

ERIC J. BONETTI,

        Plaintiff,

vs.

EPISCOPAL DIOCESE OF VIRGINIA,
ROBERT HILLER MALM,
CITY OF ALEXANDRIA,
COMMONWEALTH OF VIRGINIA
EPISCOPAL DIOCESE OF MASSACHUSETTS
ST. GABRIEL'S EPISCOPAL CHURCH

        Defendants

CIVIL Case No.: 1:21 CV190



RECEIVED
APR 15 2021
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## AMENDED COMPLAINT

COMES NOW Plaintiff, Eric J. Bonetti, and files this amended complaint, which also now includes defendants Commonwealth of Virginia, the Episcopal Diocese of Massachsetts, and St. Gabriel's Church in Marion Massachusetts.

## FACTUAL BACKGROUND

1. This dispute arises from a series of events dating from 2015.

2. On or about June 2015, Plaintiff contacted the Episcopal Diocese of Virginia, asking for its help in mediating a dispute between the Plaintiff and Defendant Robert H. Malm.

3. The Diocese declined to do so on the basis that the conflict was "not of weighty and material importance to the ministry of the church."

4. The day after Plaintiff received the Diocese's written statement that it would not assist, Plaintiff and his husband received an email from Defendant Robert H. Malm, directing them to find a new church.

1



2021 APR 15 P 12: 36

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

5. Subsequently, Plaintiff learned from church office volunteers that Defendant Malm had instructed church staff to exclude Plaintiff and his husband from the church.

6. Plaintiff complained to the diocese about Defendant Malm's shunning, only to be ignored.

7. Later that summer, memorial donations to the church donated by Plaintiff, his spouse, and indirectly by his mother, went missing. Specifically, they were solicited with the representation that they would be referenced in the church bulletin in memory of deceased family members, but no such notice appeared in the bulletins.

8. Plaintiff contacted Fairfax County's Office of Consumer Protection, which successfully obtained a refund of the memorial donations that were misused.

9. Church office volunteers, including Lisa Doelp, made it clear that the misuse of funds was done at Defendant Malm's direction.

10. Plaintiff filed a complaint with the Diocese, and expressly pointed out to the relevant diocesan representative that soliciting funds under false pretenses was at best breach of contract, and at worst fraud. Indeed, Plaintiff asked the representative, "Does Bishop Shannon understand that this is illegal?" In response, he stated that he had recommended mediation, that the bishop indeed knew that the misuse of funds was illegal, but that he didn't want to get involved.

11. At that point, Plaintiff and his family began blogging about their negative experiences with Defendants Malm and Grace Episcopal Church.

12. Subsequently, the conflict gained media attention, including on church abuse blog "The Wartburg Watch," which has been recognized by the New York Times for its efforts to expose abusive churches and abusive clergy.

13. Possibly as a result, the diocese attempted mediation. Plaintiff met with Defendant Malm, Episcopal Bishop Shannon Johnston, and a member of the bishop's staff at St. George's Episcopal Church in Fredericksburg VA.

14. During the meeting, Defendant Malm lied several times, including saying, "Having resigned from the church's vestry, you were no longer eligible to serve as a trustee." Plaintiff replied, "Why, then, are none of your current trustees members of the vestry?" Defendant Malm declined to answer, but subsequently has denied under oath that he told this lie.

15. The result of the meeting was that it was agreed that:

   a. Plaintiff and his spouse would be welcome at Grace Church if they chose to attend.

   b. Plaintiff agreed to stop blogging about his experiences.

   c. Defendant Malm wrote a letter of apology to Plaintiff's spouse for his behavior.

   d. **One very important caveat was agreed to by all in the room**, which is that the agreement extended only to those in the room and expressly did not include Plaintiff's extended family, spouse, or anyone else. Indeed, Plaintiff specifically cautioned that several family members loathed Malm, were "blogging up a storm," and would likely continue to do so for the forseeable future.

16. Subsequently, Plaintiff was contacted by Bishop Shannon Johnston about a blog belonging to a Plaintiff's mother (Sigrid Yahner), and asked to assist in taking it down. Plaintiff declined to engage in triangulation over the matter, as his mother was terminally ill and had myriad personal issues, difficult to deal with under the best of circumstances. Moreover, Plaintiff was dealing with chronic health issues of his own and was simply unable to get involved.

17. Defendant Malm then contacted the FBI and the Alexandria police department, claiming that various words in Ms. Yahner's blog, taken out of context, were threats and proclaiming the matter to be one of "domestic terrorism." For example, the use of the word "suicide" — in a note written by a college-aged church member to the Plaintiff, urging him to commit suicide, and republished on the blog — was one example of Malm's fabricated threats. Similarly, a scholarly article about the psychological effects of shunning, written by a mental health professional, which used the phrase "psychological torture," and was published in a blog, was another of Malm's fabricated threats. And Ms. Yahner's favorite classic rock band, the Richmond-based "Killer B's," which Ms. Yahner had used as a collective pseudonym for her and several of her female friends for many years, all of whom had last names beginning with the letter "B," was another of Malm's fabrications. (Ms. Yahner's last name during her first marriage was Bonetti.)

18. Both the FBI and the City of Alexandria police department declined to get involved, and no criminal charges were filed.

19. The City of Alexandria police department did, however, send police officers to a meeting at Grace Episcopal Church to advise the church to seek a civil protective order in the

courts and provide information on how to accomplish this goal. To the best of Plaintiff's knowledge and belief, none of the City representatives was licensed to practice law in this manner. A copy of an email from Defendant Malm to family members referencing the meeting is attached as **Exhibit A**. Tellingingly, the email is one of several written statements against interest in which Defendant Malm denied feeling threatened — contrary to his representations to the police department and the courts.

20. Plaintiff believes and avers, as he has said in prior pleadings, that the actions of the Alexandria police department constituted the unauthorized practice of law. The decision to go to court involves myriad factors, including reputational, financial, organizational dynamics and more. Not only was the City unprepared and ill-equipped to address these issues, but the city's advice to the church was ill-advised, at best. Not only were the police aware that there were no threats of imminent harm within the meaning of the Virginia protective order statute, but their advice led the church down a path of litigation that has resulted in profound reputational damage, the shedding of more than one-third of the church's pledging units, and financial free-fall. Indeed, Plaintiff believes that any objective attorney would have strongly recommended against going to court, for doing so is invariably damaging to a non-profit organization that depends on the goodwill of its members and the public for its cash flow. Indeed, a rational actor will typically avoid going to court unless absolutely necessary, and even then there are times it is simply better to cut one's losses and take a pass on potential litigation. A police officer, with at best a limited understanding of civil litigation and its inherent risks, does no one any favors in wading blindly into a civil dispute of this sort. And it is probably fair

to conclude that free legal services in civil disputes are not available via the Alexandria police department to the public at large. Thus, the situation is rife with conflicts of interest, issues involving due process and equal protection, biased policing, and more. To be sure, the department's actions undoubtedly began with the best of intentions, but the result has been a debacle that erodes trust in the City's judgment and commitment to impartiality.

21. This meeting referenced above was attended by the church's vestry (board of directors), Defendant Malm, Malm's wife (not a named party in this action), and others.

22. In the resulting proceedings in the Alexandria Courts, **Defendant Malm admitted he had not been threatened by Plaintiff. Nor did he deny that Plainitff and he had not spoken in many months, traded emails, or seen each other in public.** (One important exception: After receiving service of process, Plaintiff sent Defendant Malm an email stating that Malm was to have no further contact, directly or through others. Nothing else was said. Malm has repeatedly violated this request, despite the fact that going no-contact is clearly in th best interest of all parties.

23. During the proceedings, Defendant Malm cited a number of facially irrelevant issues, including that Plaintiff had silently protested outside the church, on public property; had resumed blogging about his negative experiences with the church; allegedly disobeyed the guidance of the Episcopal Bishop of Virginia; and even protested outside in cold weather, which he claimed "alarmed" church members.

24. Nor is a protective order, to use Defendant Malm's exact words from his witness tampering email to Dee Parsons, a "disciplinary measure[s] our leadership has decided

6

are necessary to take with the advice of the APD." **(Exhibit B).** It is for the protection of persons facing an imminent and objectively reasonable threat of imminent harm — not a disciplinary process for clergy who dislike a former parishioner.

25. In short, every issue Defendant Malm cites is a willful misrepresentation of the goals of the protective order system and a flagrant attempt to suppress First Amendment rights by using the protective order system as a Strategic Lawsuit Against Public Participation.

26. Thus, Plaintiff believes and avers that there was not even a rational basis to support the ruling of the Alexandria General District Court.

27. Following the ruling of the Alexandria General District Court, Plaintiff immediately appealed to the Alexandria Circuit Court.

28. At about that time, Defendant Malm, acting on behalf of Grace Episcopal Church, engaged in witness tampering by contacting Darlene Parsons, publisher of The Wartburg Watch, referenced supra, whom he knew to be a key witness for the Plaintiff, attempting to dissuade her from testifying. Tellingly, **Malm expressly referenced the ongoing litigation. Exhibit B.**

29. Defendant Malm's wife, Leslie, also referenced supra, made several similar efforts at witness tampering, both by phone and email. In one case, she told Ms. Parsons that Plaintiff had admitted in open court that his mother's blog was actually his. When Ms. Parsons questioned Leslie about that fabrication, she fell silent. Thus, Leslie Malm's witness tampering took a different tack from that of her husband. Rather than trying to dissuade witnesses, Leslie tried undercutting the support of witnesses by lying to them.

30. During discovery, Defendant Malm emailed Ms. Parsons several more times in an effort to influence her testimony.

31. Defendant Malm also emailed the City of Alexandria police department, expressly asking if there was some way to impose a prior restraint on Plaintiff's criticism of Malm's conduct. **Exhibit C.**

32. During discovery, before the Alexandria Circuit Defendant Malm and Grace Episcopal Church committed perjury in writing, while advised by church legal counsel, under oath, on an issue central to the litigation, which was their reason for their assertion that Ms. Yahner's blog was actually the Plaintiff's. Specifically, Malm stated that "time after time, scheduled meetings with…Sigrid Yahner are cancelled." Thus, the implication was that it was Plaintiff contacting Malm. However, neither Ms. Yahner nor anyone purporting to be her ever made these claimed appointments, and Malm has refused to provide evidence to support his claim. And in subsequent litigation in Massachusetts, Malm lied to the judge, claiming that he "didn't even know his mother's name," — despite the fact that his initial perjury referenced her by name. **Exhibit D.** This is highly material, for it goes to the heart of Malm's fabrication that Ms. Yahner's blog actually belonged to the Plaintiff. Thus, this lie undercuts Malm's entire case.

33. In the meantime, Defendant Malm repeatedly attempted to damage Plaintiff's reputation by telling members of the church, the community, and even diocesan officials that Plaintiff is "sick," "twisted," "dysfunctional," "starving for attention," a "sad individual," and more. Complaints to the diocese, which is hierarchical in nature and has

supervisory authority over Malm as well as an equitable ownership interest in all parish assets, were ignored.

34. Similarly, complaints to the Episcopal Diocese of Virginia about Malm's perjury were brushed off in writing on the disingenuous basis that no charges have been filed. Tellingly, there is no requirement of criminal conduct when a clergyperson is, for example, accused of having an affair, misusing funds, or otherwise charged with misconduct.

35. The conduct of defendants Grace Episcopal Church and Malm during litigation were consistent with their other conduct in this matter, including:

    a. Inflammatory rhetoric in court pleadings, including terming this a case of "domestic terrorism."

    b. Fabrications in the church's pleadings proferred to the Alexandria Circuit Court, including falsely claiming that Plaintiff had never been a police officer and never been licensed as an attorney. Notably, these were presented as facts, not as conclusions, suppositions, or the results of potentially incomplete research.

    c. Dilatory and oppressive conduct at every turn, leading Ms. Yahner's person attorney to volunteer the observation that "this attorney is coming at you with a personal vendetta," with reference to the church's then legal counsel, Jeffery Chiow.

    d. Ignoring the court's order to compel, after providing nothing but evasive and dilatory discovery responses — a track record that continues even now with the current litigation in the Alexandria Circuit for abuse of process.

9

e. Concealing at least 16 documents, uncovered in subsequent litigation, that were squarely within the ambit of discovery. Two would have been highly damaging to the Defendants' case had they been disclosed in a timely manner; one of the two was defamatory and falsely accused Plaintiff of embezzling from a previous employer; the other contained a statement against interest that admitted that Malm had not been threatened. Tellingly, when Defendant Malm forwarded the defamatory message to the Episcopal bishop of Virginia, he tacked on a knowingly lie about the timing of Plaintiff's becoming a church member, thus dodging the inevitable question, "If this guy was such a dirtbag, why did you have him serving on your vestry?" Thus, by including this lie, Malm demonstrated actual malice. And several of the documents concealed during litigation were emails that copied the church's then attorney, Jeffery Chiow, meaning he had actual nowledge of their existence. As a result, there now is an active attorney disciplinary complaint against Mr. Chiow in Washington, D.C. And the church now asserts that litigating the defamatory email is barred by the one-year Virginia statute of limitation for defamation — despite the fact that the delay was caused solely by the church's concealment of the document in question. And in a gesture of pure chutzpah, the church now is trying to introduce the very same defamatory email it concealed in prior litigation as evidence in the Alexandria Circuit Court to impugn the plaintiff's integrity. A copy of the defamatory email, which includes Malm's lie about the timing of Plaintiff's arrival at Grace Church, is attached as **Exhibit E.**

f.  Attempting to subpoena Ms. Yahner, which Defendants Malm and Grace Episcopal Church knew to be in hospice care, in violation of Pennsylvania state law, which requires prior leave of court in such situations. Moreover, Ms. Yahner, incontinent, reliant on oxygen and morphine, and suffering a profound anxiety disorder due to her terminal illness, couldn't possibly have complied. True to form, when Bishop Susan Goff and other diocesan officials were informed of this development, they ignored Plaintiff. And when the Pennsylvania courts tossed out the subpoena, the church lied to the court and claimed it didn't know that Ms. Yahner was terminally ill — despite the fact her terminal illness was amply set forth in her blog, and Plaintiff had discussed the matter directly with Defendant Malm in happier times.

36. Throughout the litigation, Plaintiff repeatedly complained to the City of Alexandria and its police department about Defendant Malm's perjury; his witness tampering and that of his wife, Leslie; his fabrications to city officials; and his efforts to threaten and intimidate Plaintiff. The latter includes a notable incident along Russell Road in Alexandria, in which Malm slowly drove up to Plaintiff — a person he claims he is afraid of — sized up the situation, climbed out of his vehicle, and began screaming threats. And while the threats themselves were alarming, Malm's over-the-top screaming and body language were sufficient to send nearby neighbors dashing inside their homes in fear for their safety. Thus, Malm's conduct, taken as a whole, was objectively speaking a terroristic threat, and a direct violation of Plaintiff's request, expressly made pursuant to the Virginia anti-stalking law, for no further contact. This provision, set forth at Va. Code

11

§ 18.2-60.3., expressly states that contact following an express request for no further contact is prima facie evidence of stalking. Yet the Alexandria police officers who responded urged Plaintiff to "just forget about it" — hardly the approach when they were encouraging Defendants Malm and Grace Episcopal Church to use the protective order process as a "disciplinary measure" against Plaintiff.

37. As Plaintiff has previously stated, the City of Alexandria cannot, consistent with due process and equal protection, wade into a civil dispute, engage in the unauthorized practice of law, provide free legal advice and other assistance to one party, and then turn around and categorically refuse to examine evidence from the other party of criminal conduct on the part of the first party. Nor are we talking about minor violations — instead, we are looking at issues that go to the very heart of maintaining the integrity of the judicial process, including the defendant's filing false police reports, committing perjury, engaging in multiple instances of witness tampering, engaging in spoliation of evidence, attempting tortious interference with the employment of the Plaintiff, and otherwise pursuing an ongoing pattern of illegal conduct falling squarely within the definition of obstruction of justice. And yet, seemingly because a church is involved, the City of Alexandria treats it as a given that this conduct did not occur, despite myriad examples to prove the veracity of these claims and the mendacity of Defendants Malm and Grace Episcopal Church.

38. As to the Episcopal Diocese of Virginia, its actions extend beyond turning a blind eye to Malm's perjury and other misconduct. Indeed, it provided legal advice to Bob Malm and Grace Church via its litigation counsel, Brad Davenport, Esq., of Troutman Sanders, in

12

which they were apparently reminded that the First Amendment protects speech, even if unpopular. The diocese also has stated in writing its support of Bob Malm, and has actual knowledge, as discussed supra, that the church's intentional misuse of memorial donations was illegal. Even so, the diocese has expressly said it will not get involved, despite the illegal nature of Defendant Malm's conduct.

39. Apropos the Episcopal Diocese of Massachusetts and St. Gabriel's Church, a similar fact pattern pertains. On multiple occaisons, most recently December 20, 2020, Defendant Malm contacted the Marion police, falsely claiming that Plaintiff has "threatened," "stalked" and "harassed" him and his family. Malm pursued a harassment protection order in the Massachusetts courts based on these fabrications, with a view towards silencing criticism of him. This matter is still in litigation. Both the parish and the diocese have been alerted to these Malm's fabrications, to his perjury in the Massachusetts Courts, and to his libelous statements, and have thus far stated that they don't find Defendant Malm's conduct to violate any church norms or disciplinary canons. Indeed, both the church and the Diocese have expressly stated their support for Malm's actions, and Malm states under oath that a member of the church called the police alleging that Plaintiff was acting illegally by peacefully protesting on a public sidewalk near the church. Thus, the church and diocese are fully part of Malm's ongoing efforts to suppress Plaintiff's First Amendment rights. Moreover, the church maintains a defamatory video on its website, dated December 20, 2020, in which Malm libels the Plaintiff with the claims described above. The church and diocese have been asked to remove the video, but have ignored the request. Thus, both the diocese and its

13

constituent parish not only are republishing Malm's libelous statements, but they are refusing to address his perjury committed in Massachusetts, while serving as interim rector of St. Gabriel's Episcopal Church in Marion. That perjury is referenced in **Exhibit D.**

40. Plaintiff avers that Defendant Malm and his family have repeatedly violated the Federal Stored Communications Act, 18 U.S.C. Chapter 121 §§ 2701–2712) by attempting to access Plaintiff's blog, which expressly prohibits access by them. The blog further operates several security measures designed to prevent access by Defendant Malm and his family, including using IP geolocation to block visitors from areas in which they live and work. And yet access logs reveal numerous access attempts, and attempts to bypass security, originating from Malm's home. While these access attempts have stopped since a series of terse conversations with Malm's attorney, Wayne Cyron, Plaintiff nonetheless requests an injunction prohibiting Defendant Malm and his family from accessing the blog, located at www.gracealexwatch.org, or attempting to bypass security measures. Indeed, some of the access attempts follow a worrisome pattern, with dozens of attempts in a single day. And simply put, Plaintiff knows of no legitimate reason that Defendant Malm and his family would access a blog that they falsely claim is "harassing" and "threatening," particularly when doing so involves a waiver of rights that must be agreed to in order to obtain access. A screen cap of the relevant terms and conditions for the site, which must be agreed to in order to access to site, is included as **Exhibit E.**

14

41. Lastly, Plaintiff notes that other than conclusory denials, none of the defendants have presented any evidence that Defendants Malm and Grace Episcopal Church have not engaged in perjury, made false police reports, engaged in spoliation of evidence, engaged in witness tampering, attempted tortious interference with Plaintiff's employment, or engaged in smear campaigns within the meaning of the Virginia common law and statutory torts of conspiracy.

<u>Legal Claims</u>

42. Plaintiff avers that defendants City of Alexandria, Grace Episcopal Alexandria, Robert Hiller Malm, and the Episcopal Diocese of Virginia (the Virginia defendants) have, within the meaning of the Virginia common law, engaged in the tort of civil conspiracy by:

   a. Acting in combination, as evinced by the meeting at Grace Church to formulate a plan to improperly obtain a protective order, and in furtherance of the church's stated goal of imposing "discipline" on Plaintiff.

   b. Knowingly attempting to subpoena Plaintiff's terminally ill mother, then suffering from late-stage COPD and congestive heart failure, unable to walk or leave her home, incontinent and reliant on oxygen and morphine, and suffering from a profound anxiety disorder, knowing full well that she could not comply, and that a subpoena would cause Ms Yahner, already acutely frail emotionally, psychologically, and physically, profound suffering and anxiety.

   c. To accomplish, by concerted action, and with deliberate malice, illegal and improper objectives, as evinced by Robert Malm's lies, witness tampering, and

15

perjury, and spoliation of evidence before the Virginia courts, during discovery, and elsewhere.

d.  Acted to achieve illegal and improper purposes through illegal and improper means, including but not limited to, perjury, making false reports to law enforcement, and engaging in spoliation of evidence, with an intent to infringe on Plaintiff's First Amendment and other rights, and to obstruct justice within the meaning of the Virginia criminal statutes.

e.  Damaging the reputation of the plaintiff by publicly and privately referring to him, without limitation, as "sick," "twisted," "dysfunctional, "mentally ill," "threatening." Such comments are particularly damaging when coming, as here, from a clergy person who previously had a pastoral relationship with the Plaintiff, and when the Episcopal Diocese of Virginia lends its tacit support by accepting without objection emails and other correspondence from Malm containing these statements.

f.  Engaging in threats and violence, with one parent of Grace Episcopal School, an entity owned and operated by Grace Episcopal School, swerving his white pickup truck at Plaintiff at a high rate of speed in an effort at intimidation. Others are less open in threatening violence, but Plaintiff has been shoved by parishioners, threatened, and even "flipped off" by members as they depart church services.

43. Plaintiff avers that the Virginia defendants have, within the meaning of Virginia statutory law set forth at Va. Code § 18.2-499 et seq., engaged in statutory conspiracy by:

16

a. Acting in concert, as evinced by their litigation, perjury, and cooperative efforts against the Plaintiff.

b. Attempting to injure Plaintiff's reputation by accusing him of "domestic terrorism," of making threats, of embezzling from a previous employer, and more.

c. Attempting to prevent and hinder Plaintiff from criticizing them and otherwise exercising rights guaranteed under state and federal law, including exercising his right to protest in front of Grace Episcopal Church.

d. Knowingly attempting to subpoena Plaintiff's terminally ill mother, then suffering from late-stage COPD and congestive heart failure, unable to walk or leave her home, incontinent and reliant on oxygen and morphine, and suffering from a profound anxiety disorder, knowing full well that she could not comply, and that a subpoena would cause Ms Yahner, already acutely frail emotionally, psychologically, and physically, profound suffering and anxiety.

44. Further, Plaintiff believes and avers that all named defendants have conspired and acted in combination to deprive Plaintiff of his rights to due process, the equal protection of the laws, and his First Amendment rights as guaranteed by state and federal law to blog about his negative experiences with the Episcopal Church and Bob Malm, the misconduct of its officials, including perjury, witness tampering, defamation, spoliation of evidence and more.

45. Plaintiff believes and avers that the City of Alexandria has attempted to chill Plaintiff's First Amendment rights in violation of the federal civil rights statutes via various facially

17

pretextual police actions, including claiming that Plaintiff was "obstructing" an empty sidewalk, that he was "standing too close" to the church's driveway, that he was "protesting in traffic" and more. As stated previously, it simply is not possible to obstruct an empty sidewalk with no pedestrians. Moreover, Plaintiff is well aware of the driving habits of Northern Virginians, and can assure all parties that he has not, and does not, protest in the midst of moving traffic. And the police rolling in to demand to see identification, to ask why Plaintiff is protesting, to ask if he is carrying weapons and to interrogate Plaintiff is a facial violation of First Amendment rights absent some larger reason for a stop; it would be sufficient to deter most citizens from the enjoyment of their First Amendment rights. Indeed, Plaintiff has an utterly clean criminal record and perfect driving record, has never used drugs, and has successfully passed a full polygraph exam and background investigation to become a police officer. Thus, this is not the sort of situation where there is some larger issue lurking behind the scenes to motivate the City of Alexandria police department to act in this manner. The conduct of the City is solely based on its collusion with Defendants Malm and Grace Episcopal Church and its advice to use the protective order process to suppress unpopular speech. Further, Plaintiff believes discovery will reveal remarkably few protestors in the city are stopped and interrogated repeatedly the police absent illegal conduct. And as noted in prior pleadings, the City Attorney's office is misinformed as to the number of times this has happened.

18

46. As to Defendant Malm's assertions about an "imposter" website, Plaintiff's blogs and writings expressly state they are not official publications of the relevant churches. Thus, no rational actor would agree with Malm's fabricated claims.

47. Plaintiff alleges that the Commonwealth, acting via the Alexandria courts, has violated Plaintiff's rights to due process and equal protection of the laws by imposing a protective order with absolutely zero evidence of any sort of threat against Defendants Malm and Grace Episcopal Church. As stated elsewhere, **Malm himself stated, in open court, that he had not been threatened by Plaintiff. Nor did he deny that he had not communicated with or seen Plaintiff in many months.** Va. Code § 19.2-152.10, the protective order statute, simply does allow for an order because, as Malm and Grace Church have alleged, someone peacefully protests on public property near your church, allegedly doesn't follow the bishop's guidance, blogs about you in a way you don't like, or any of the other disingenuous arguments set forth by defendants Malm and Grace Episcopal Church.

48. Plaintiff alleges that the City of Alexandria continues to violate Plaintiff's rights to the equal protection of the laws by refusing to even investigate, let alone prosecute, perjury, witness tampering, and spoliation of evidence by Grace Episcopal Church and Robert Hiller Malm, despite myriad requests to do so. And while Plaintiff recognizes that these are crimes that are rarely charged, this is an egregious situation involving multiple instances of illegal conduct. And given the position of trust and respect that the church and Malm enjoy — a factor Malm has shamelessly traded upon — criminal prosecution is surely warranted here. It should be further noted that even just a few weeks ago the

19

City Attorney's office was rejecting out of hand requests to address Malm's perjury and other misconduct.

49. Plaintiff further alleges that the defendants have engaged in conspiracy to deprive Plaintiff of his rights under the First Amendment, as well as his rights to due process and the equal protection of the laws of the United States of America and the Commonwealth of Virginia, in violation of 42 U.S.C. 1985. This includes:

   a. engaging in witness tampering by repeatedly attempting to dissuade Darlene Parsons from testifying on Plaintiff's behalf;

   b. attempting to dissuade the Rev. Bob Perry from testifying on Plaintiff's behalf;

   c. attempting to dissuade the Rev. Richard Wall from testifying on Plaintiff's behalf;

   d. attempting as recently as January 2021, during litigation in Massachusetts, to identify Plaintiff's employer with a view towards further infringing on Plaintiff's rights.

   e. Refusing to address Defendant's Malm's illegal conduct.

   f. Jointly developing and implementing a plan to engage in abuse of process by using the protective order system as a Strategic Lawsuit Against Public Participation (SLAPP).

50. Plaintiff alleges that the Episcopal Diocese of Massachusetts and its constituent component, St. Gabriel's parish, have libeled Plaintiff by virtue of the December 20, 2020 video on the church website, which publishes the defamatory claims that Plaintiff has "stalked" and "harassed" defendant Malm and his family. But as stated elsewhere in this pleading, writing about someone on one's blog is neither stalking, nor harassment,

nor threatening, absent some specific threat of imminent harm. And again, such fabrications are particularly damaging when they come from a priest and a church.

51. Plaintiff waives the right to a trial by jury.

### Request for Relief

- Plaintiff requests an immediate injunction to prevent Defendant Malm or persons acting on his behalf from contacting persons he knows, or has reason to know, will be witnesses at trial.

- Plaintiff requests an immediate injunction to prevent Defendant Malm from further contacting Plaintiff, except through legal counsel.

- Plaintiff requests an immediate injunction to prevent Defendant Malm from further attempting to intimidate Plaintiff.

- Plaintiff requests compensatory and treble damages from those defendants found to have violated the Virginia common law and statutory torts of conspiracy.

- Plaintiff requests that the City of Alexandria provide the equal protection of the laws to Plaintiff by conducting a full, fair, unbiased investigation of the witness tampering, perjury, filing of a false police report, and spoliation of evidence by Grace Episcopal Church and Robert Malm, then bringing appropriate criminal charges against Grace Episcopal Church and Robert Hiller Malm.

- Plaintiff requests compensatory and punitive damages for the libelous statements published by the Episcopal Diocese of Massachusetts and St. Gabriel's parish on the church's video feed, dated December 20, 2020. Plaintiff further notes that both the

21

church and diocese have been asked in writing to retract these fabrications but have ignored these requests.

- Plaintiff seeks compensatory and punitive damages for the multiple violations of his state and federal civil rights.

- Plaintiff requests that the decision of the Alexandria General District Court imposing a protective order be stricken as violative of Plaintiff's rights to due process and the equal protection of the laws.

- Plaintiff requests that the City of Alexandria be enjoined from further efforts to chill his First Amendment rights by sending police to interrogate him absent some reasonable belief of possible criminal conduct. First Amendment-protected activity, without more, is never a legitimate reason for interrogating citizens, demanding identification, or threatening arrest for allegedly obstructing an empty sidewalk.

- Plaintiff requests the reward of actual damages, including his legal fees resulting from Defendants' illegal conduct.

- Plaintiff requests an injunction against Defendant Malm and his family pursuant to the Federal Stored Commmunications Act preventing access to Plaintiff's blog and prohibiting attempts to bypass security, along with damages as specified by the act.

- Plaintiff requests all such other relief as the Court, in its discretion, may deem appropriate.

22

I hereby certify that I have provided a copy of the above filing to defense counsel via email, this

15th day of April, 2021 as follows:

Craig D. Roswell, Esquire (VSB No.: 33901)
Matthew J. Youssef, Esquire (VSB No.: 85339)
NILES, BARTON & WILMER, LLP
111 S. Calvert Street, Suite 1400 Baltimore, Maryland 21202
(410) 783 –6357
(410) 783 –6452
cdroswell@nilesbarton.com
mjyoussef@nilesbarton.com
Counsel for Defendant, Grace Episcopal Church and Episcopal Diocese of Virginia

Wayne F. Cyron, Esquire (VSB No. 12220)
CYRON & MILLER LLP
100 N. Pitt St., Suite 200
Alexandria, VA 22314
703-299-0600
703-299-0603 (fax)
wcyron@cyronmiller.com
Counsel for Defendant, Robert H. Malm

George McAndrews, Esq.
Alexandria City Attorney
301 King Street, Suite 1300
P. O. Box 178
Alexandria, Virginia 22313
George.mcandrews@alexandriava.gov

City/County of ___Fairfax___
Commonwealth of Virginia
The foregoing instrument was acknowledged before me
this _15th_ day of ___April___, _2021_
by ___Eric  J  Bonetti___
___Pong  S.  Kang___ Notary Public
Reg. # ___7625038___ Com. Exp. _04/30/2023_



Copies will promptly be sent to the newly added defendants together with a request for waiver of service once the clerk has prepared the relevant forms. The Commonwealth will be served directly, without a request for waiver of summons.

I swear and affirm that the foregoing is accurate and true, to the best of my knowledge and belief, upon penalty of perjury.

Respectfully submitted,

Eric J. Bonetti
Pro se plaintiff
4129 Fountainside Lane 203

23



Fairfax VA 22030
703-973-4984
Eric.bonetti@me.com

24

**Exhibit A — Documentation of Meeting at Grace Church With City of Alexandria. Malm also states he has not been threatened.**



1 message

Bob Malm <bob.malm@gracealex.org>                    Mon, Dec 11, 2017 at 1:02 PM
                            lm <lind                           James Malm

I hope Mom won't get into posting anything on the internet re Bonetti....and I hope none any get involved in this in any way...he's angry at me, and he'll use anything he can to try to hurt, discredit, discourage me...he knows that when he "threatens" bringing my family into his sad blogs, that's something that would upset me...and I don't know how he uses social media to find out stuff about you all...I would just be very careful to be sure he has no access to anything you do "on line"...and I don't know how he got a picture of the memorial stone at Evergreen Cemetery in Marion? He is resourceful and vindictive...a problematic combination leading to evil...He refuses to talk to the Bishop or follow the Bishop's guidance. He claims he is not responsible for the blogging...it's "family members"....but no one, not even his partner, has some of the details he uses to weave into his fictional blog accounts...remember, he was Jr. Warden in 2014; he had access to all kinds of information; he also seemed to want to help us during my accident and recovery, but obviously I made him extremely angry when I returned in June 2014 and basically had to "put him in his place" since he had created many problems at Grace during the 3 ½ mos. I was out...few people here read his blogs; few even know about his blogs; those who do mostly think he's an angry, sad man...a few, like Mom, feel anxious about him doing something hurtful or violent...I don't share this anxiety, but to do something concrete, we are having an officer of the Alexandria Police Dept. come here next Tuesday to meet with our staff, Executive Committee and others (Mom, Leslie Steffensen, etc)...he will advise us re actual legal actions law enforcement can take in response to this harassing and abuse of the internet...hopefully he'll have some specific steps the APD can take...how Bonetti responds is anyone's guess....my sense is that he will go wild with blogs, unless the police can actually charge him with harassment or something else...to give even a minute of attention to this, not to mention getting upset about it, feeds into his warped agenda...I'm convinced he started back, and each month increases the number of blogs, because no one is paying any attention to him, and this infuriates him...just like the Bishop and Diocese being 100% behind me and Grace Church...I'm happy to have the APD pay attention to him, so we don't have to give him a second of our time...btw, Tina, Kristin, and Charlotte are in NYC, but not close to where the bomb went off this morning....I was in touch with her at 8am....what a blessing this event wasn't worse

Bob Malm <bob.malm@gracealex.org>

I was at the Alexandria Courthouse for 3 hours this morning...we had about a 45 minute "hearing" re extending the "protective order" over Bonetti....he was there with his lawyer...Jenni Faires, Fanny Belanger, and Jan Wolff went with me.....Jeff Chiow came in at the end....the order is extended for 2 years....Bonetti can try to appeal or make a deal/settlement...his lawyer and Jeff were discussing this when we left...please let me know if you encounter any "issues" with Bonetti going further....this does not necessarily mean he'll stop his internet "attacks"....someone reminds us "the truth will make you free...."

**Exhibit B — Witness Tampering by Bob Malm. Church attorney and diocesan official copied**



| | |
|---|---|
| **From:** | Bob Malm <bob.malm@gracealex.org> |
| **Sent:** | Wednesday, February 07, 2018 4:12 PM |
| **To:** | dee@thewartburgwatch.com |
| **Cc:** | Dee Parsons; 'Leslie Malm'; 'Pat Wingo'; jchiow@rjo.com |
| **Subject:** | letter of 1/19 |

Dee, I'm disappointed to read a letter I assume Eric asked you to write dated 1/19/18 that he posted on one of the two web sites where he continues to attack me and the leadership and, in fact, most of the congregation of Grace Church. You might not consider him violent or threatening; however, many at Grace do. The Alexandria Police Dept. does not get involved in cases unless they are very concerned about the individual's behavior. Eric can claim that I filed a "false police report", but that's not true. And the Magistrate for the Commonwealth Court would not rule to place a two year protective order on Eric if there was not good cause. Eric is using you to try to counteract the disciplinary measures our leadership has decided are necessary to take with the advice of the APD. Lastly, you need to know that I have never met his Mother; as far as I know she has never attended Grace Church. Eric testified to this under oath in Court. Nor have I ever met any of his cousins and whoever else he claims are "family members" responsible for blogging. For him to tell you he can not "restrain" or "control" their blogging seems at best disingenuous. As he has taken advantage of your reputation and credibility, so too, he has taken advantage of "family members" who have had nothing to do with Grace Church. You spoke with my wife some weeks ago and told her you were not going to post Eric's material. Now your letter appears as a way for him to deal with a very real court order. Note that the Magistrate issued his order 5 days after you wrote this letter. We know Eric will appeal this order. We are prepared to hold him accountable in whatever way it is necessary. Jesus is "truth". Eric should learn this...and any one wanting to help him should not compromise the truth, nor accept half truths and lies.

**The Rev. Robert H. Malm**
Grace Episcopal Church
3601 Russell Road
Alexandria, VA 22305
703.549.1980
www.gracealex.org

26

**Exhibit C — Bob Malm's Request to the City of Alexandria Police Department to Impose a Prior Restraint on Plaintiff's Speech**



27

## Exhibit D — Bob Malm's Perjury — Original Perjury, Alexandria Courts

F

Sworn testimony re Sigrid Yahner, my late mother

*Sworn response, initial interrogatories:*

### ANSWER:

The language among the blogs is consistent and with the exception of his Father Frank, neither I (nor anyone to my knowledge) has ever seen or met his family members, or any of several other characters who supposedly know Grace Church and me through Mr. Bonetti, e.g. Elizabeth and Latimer Digby. Time after time scheduled meetings with Elizabeth or Latimer Digby and Sigrid Yahner are cancelled. The remaining family members remain nameless. A December ~~~~ear's Resolutions" says "Aim for one protest a week outside Disgrace church, while avoiding weddings and funerals whenever possible." No one to my knowledge has ever spotted a Protester besides Mr. Bonetti. Additionally, a December 26, 2017 blog post contains the following:

> So let's assume for a minute that Bob Malm is right, that Eric is the person behind this blog. Even were that the case, Bob would still be entirely in the wrong.
>
> * * *
>
> 3. Victims of abuse need to do whatever they find necessary to recover from abuse. If that involves blogging, that is perfectly acceptable, even if it involves changing one's mind over previous commitments to take down a blog. A promise made under duress is not binding, especially when it is made to an

28

**Exhibit D — Bob Malm's Perjury — Massachusetts Courts**

courts in Virginia already, and now he's --

THE COURT: I've heard nothing about the -- what is the purpose of these --

MR. MALM: Here's one of the cases that he's got against me now right now.

THE COURT: And what is he alleging that you --

MR. MALM: He says I lied about some meeting with his dead mother. It's in some little response that a lawyer that was representing me and Grace Church down there had given. I didn't --

THE COURT: And was there a lawsuit -- were you involved with his mother in some way as a pastor or --

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

32

MR. MALM: No. I didn't even know his mother's name. But he had a website that ~~████████████████~~ his mother had created about Grace Church in Virginia. So basically our attorney during this appeal process had to find out who -- you know, did his mother really have this website. And we couldn't get the mother to say she did or didn't. He said he did -- she did.

But anyway, this is a long part of the story that's not

**Exhibit E — Defamatory Email Concealed by Defendants During Initial Litigation. Defendant Malm is now attempting to introduce this into evidence against Plaintiff in the Alexandria Courts, despite the fact that it opens with a knowing lie about the timing of Plaintiff's arrival at Grace Church. Plaintiff thus believes this evinces actual malice.**

---

**Bishop Shannon Johnston**

From:        Bob Malm <bob.malm@gracealex.org>
Sent:        Wednesday, November 22, 2017 12:14 PM
To:          Pat Wingo
Cc:          Bishop Shannon Johnston
Subject:     FW: Online Postings

Kelly is on our Vestry...you see the reference to Bonetti's position prior to arriving at Grace....pretty bad stuff...some here think he's hacked into our systems!

From: Kelly Gable [mailto:kellygable1@aol.com]
Sent: Wednesday, November 22, 2017 11:47 AM
To: Bob Malm <bob.malm@gracealex.org>
Subject: Re: Online Postings

Of course...that absolutely goes without saying.

I have already discouraged people from reading his blogs any further, as it is filled with the same regurgitation of what he's said in the past, and that reading it doesn't serve any positive purpose (privately, I personally am trying **very** hard not to see his daily updates as well).

I think one of the reasons I've been asked about this is the fact we once worked together, briefly about 4-5 years ago, as you know. Some who are aware of that connection have spoken to me in the past as well. At that time, I shared to those that were still angry with him, is that after a period of fairly intense prayerful contemplation, I was finally able to move forward and forgive him – and let go of any anger I had, for my own peace of mind (ironically, that was Thanksgiving Day 4 years ago).

Please know that outside of clergy/staff or those also involved with him at the non-profit, only close friends and family know all the details of what I experienced and witnessed firsthand, while working together. I know from past personal experience that he's a pathological liar, he's embezzled funds, and that he has the ability to set up video and audio surveillance within buildings, phones, and on network

30

**Exhibit E — Website Terms and Conditions and Waiver of Rights**



Interested in being part of a church that tries to drag the dying into court?

If so, Grace Episcopal Alexandria is the perfect church for you.

Here is a photo of my late mother, dying of COPD, taken at about the time rector Bob Malm and Grace Episcopal Church tried to drag her into court.

Access to this blog is prohibited to Bob Malm, Lindsey Malm Anders, or any members of their families. Access also is forbidden to anyone acting, directly or indirectly, on their behalf. In addition, by accessing this site, you agree that no content, including screen caps, may be shared with any of the above parties, directly or indirectly.

You also may not access this blog if you believe that writing about abusive conduct in a church is not protected by the First Amendment, or you believe that writing about abuse in a church constitutes harassment of those persons/organizations referenced.

Violation of these these terms and conditions is a violation of Virginia Code § 18.2-151 et seq and may result in civil and criminal penalties.

This blog is not an official publication of Grace Episcopal Church or the Episcopal Diocese of Virginia and is neither sponsored nor endorsed by either organization.

☐ I Agree

31

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
____Civil____ DIVISION

___Bonetti___
Plaintiff(s),

v.

Civil Action Number: 21CV190

City of Alexandria Et al
Defendant(s).

## LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of___Amended Complaint___
(Title of Document)

___Eric Bonetti___
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: ___15 April 2021___ (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)

2021 APR 15 P 12: 32

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA